UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JULIE RAYMOND, beneficiary for the estate of
Randy I. Robinson,

        Plaintiff,

v.                                           Case No.  5:09-cv-170-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

        Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Randy I. Robinson's application for disability insurance benefits and Supplemental Security Income.  (Doc. 1.)  The Commissioner has answered (Doc. 10) and both parties have filed briefs outlining their respective positions.  (Docs. 23 & 26.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED.**

## I.  PROCEDURAL HISTORY

On July 7, 2005, Plaintiff filed applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI) claiming a disability onset date of October 1, 1998. (R. 76-80.)  Plaintiff's applications were denied initially, and upon reconsideration. (R. 22-24, 255-59.)  On May 6, 2008, ALJ Douglas Abruzzo conducted Plaintiff's administrative hearing. (R. 260-313.)  On September 30, 2008, ALJ Abruzzo issued an unfavorable decision. (R. 12-20.)    On July 2, 2008, Plaintiff's request for review was denied by the Appeals Council. (R. 4-6.)   Plaintiff then appealed to this Court. (Doc. 1.)

Plaintiff subsequently died and on April 5, 2010, Julie Raymond was substituted as the Plaintiff in this action. (Doc. 29.)  Plaintiff appeals the decision of the Commissioner denying Mr. Robinson's claim for disability insurance benefits (DIB) from his alleged onset date of October 1, 1998 through December 31, 1998, his date last insured.[1]

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5]

---

[1] The claim for SSI benefits is abandoned due to Mr. Robinson's death and the lack of survivors who qualify to receive an underpayment of these benefits. Doc. 23 at 2.

[2] 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v.

(continued...)

However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

---

[5](...continued)
Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

## III. <u>SUMMARY OF THE RECORD EVIDENCE</u>

Mr. Robinson was fifty seven (57) years old at the hearing on May 6, 2008. (R. 483-84.)  He has a high school education and has worked as a handyman and body shop manager. (R. 95, 269, 273-74, 299-300.)    Mr. Robinson contends that he has been unable to work since October 1, 1998 due to back pain, blindness in the left eye, dizzy spells, bleeding in the left eye on lifting, problems with his right eye, double

---

[18] <u>Phillips v. Barnhart</u>, 357 F. 3d 1232, 1243 (11th Cir. 2004); <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077 (11th Cir. 1996); <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Walker</u> at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] <u>Walker</u> at 1003.

[20] <u>Wolfe</u> at 1077-78.

[21] <u>Id.</u>

[22] <u>Doughty</u> at 1278 n.2.

hernia, ruptured discs in his back, elevated PSA level, difficulty sleeping, weight loss and left carpal tunnel syndrome.  (R. 12, 76-80, 104, 111.)

At the hearing, Mr. Robinson testified that he has back pain and that an MRI in 1997 showed three ruptured discs. (R. 276-77.)  No records are available to confirm this.  He received chiropractic treatment for five or six months, but he reported that it did not help and he has not had any other type of treatment for his back. (R. 131-47, 278.) He testified that he had an abdominal hernia which was surgically repaired, once in 1990 and again in 1991. (R. 279.)  Mr. Robinson reported that he had his left retina removed when he was ten years old and he has a prosthetic eye that bleeds sometimes. (R. 280.)   He had surgery for prostate cancer the month before the hearing. (R. 281-82.)  Mr. Robinson testified that he is prescribed amitryptiline and trazodone for depression and methocarbomal for back pain and that he has no side effects from his medications. (R. 283-85.)   He has tingling in his left hand that results in him dropping things and once a month his left leg gives out and he falls down. (R. 297-99.)

Mr. Robinson testified that he is able to bathe and dress himself; prepare a microwave dinner or sandwich; drive fifty miles per week; dust; mop and sweep the floor with pain; vacuum; wash dishes; do laundry; take out the trash; and grocery shop. (R. 285-88.)  Mr. Robinson testified that he would need to rest for 20 minuets after sweeping, mopping or vacuuming for 5 minutes.  Mr. Robinson watches television, reads the newspaper and does crossword puzzles. (R. 288, 290-92.)  Plaintiff reported that he was able to lift a gallon of milk, walk two blocks before his back gives out, and sit for 20 to 30 minutes. (R. 296-97.)

6

From March 2004 through May 22, 2006, Plaintiff was treated (by an unidentified health care provider) for elevated PSA polycythemia, inguinal hernia, and BPH (benign prostatic hyperplasia.) (R. 222-28.)   It was noted that Mr. Robinson was referred to Shands for elevated PSA.  (R. 227.)

In December 2005, Plaintiff was admitted to Seven Rivers Regional Medical Center for bilateral pneumonia. (R. 151-217.)  He was treated with IV antibiotics and steroids.  The admission assessment included possible chronic obstructive pulmonary disease, which was confirmed in subsequent notes (R. 158, 160, 182.)  He reported severe abdominal pain exacerbated by respirations due to hernia. (R. 184.)

In October 2007, Mr. Robinson was treated at the Citrus County Health Department for urinary tract infection, chronic low back pain and insomnia. (R. 231-37.) He reported breathing problems, headaches and gastrointestinal problems. (R. 232.) He was seen in October and December 2007 for lab results.  (R. 252-54.)  His PSA level remained elevated, he had urinary frequency, back pain, and continued insomnia with Elavil providing no relief. (R. 253.)  He reported three ruptured discs in his back (R. 254) and he was prescribed Tramadol and Trazadone. (R. 253.)

On December 24, 2007, Mr. Robinson was seen at Memorial Health Systems for urinary retention and elevated PSA, with a normal renal sonogram. (R. 126-30.)

On February 6, 2008, Mr. Robinson was seen by Thomas F. Stringer, M.D. for urinary retention and elevated PSA level. (R. 239-41.)  A diagnosis of benign prostatic hypertrophy was confirmed by photoselective vaporization and transurethral resection of the prostate on April 1, 2008.  (R. 242-44.)  On follow-up, he reported marked

improvement in urinary flow, but continued to have mild urinary retention and hematuria. (R. 245.)

The record includes four consultative examinations performed at the request of the Commissioner – Dantuluri P. Raju, M.D., on June 6, 2003; Medero Medical on May 11, 2005; Edward Demmi, M.D. on April 24, 2006; and Gary Honickman, Ph.D. on May 30, 2006.

### Dr. Raju, June 6, 2003 (R. 246-47)

Mr. Robinson reported that he had blindness and pain in his left eye, constant abdominal pain with history of surgery, and back pain with ruptured discs. (R. 246.) On examination, Mr. Robinson was able to walk unassisted, no limping was noted and he had no difficulty getting on and off the examination table.  His hand grip was normal. Dr. Raju noted stiffness and tenderness with muscle spasm in the lumbar and cervical spine.

### Medero Medical, May 11, 2005 (R. 248-51) [23]

Mr. Robinson reported chronic back pain radiating to his legs, with the right being worse than the left, but left hip pain that is more pronounced than the right hip.  He explained that he has been recommended for surgery, but that he lacks the finances, that he saw a chiropractor in 1997 and he does stretching exercises to try to relieve his pain.  He reported a history of possible prostate cancer and a number of other prostate problems, including frequency of urination, incomplete voiding and waking up

---

[23] This report appears to be missing the signature page, as the facsimile line on the top of the report states that it contains 6 pages and the last page of the report is page "005/006." (R. 251.)

throughout the night with the need to urinate.  He also noted a history of an ulcer for which he has had no treatment and abdominal hernia repair.

On examination, there was no deformity, redness, heat, swelling, pain, tenderness of other signs of inflammation of any major joints.   Mr. Robinson had pain on the range of thoracolumbar motion but no scoliosis; normal motor and grip strength; lower back pain on full range of hip motion; antalgic gait with a limp to the left leg but he walked without assistance; and neurologically, while he had positive straight leg tests, no sensory or motor defects were noted and his Romberg was normal.  Mr. Robinson was alert and oriented times three, affect and mood tone normal, and normal intellectual functioning.

### *Dr. Demmi*, *April 24, 2006 (R. 218-21)*

Mr. Robinson alleged back pain, elevated PSA, dizziness, carpal tunnel syndrome, hernia and depression.  He reported dizziness for the past four years secondary to his pain.  He also reported that his legs have given out from time to time.  Mr. Robinson noted that he had symptoms of carpal tunnel syndrome for the past year with the right side worse than the left.  He complains of occasional paresthesias of the right small finger and nighttime paresthesias.  He has had no evaluation for this complaint.

The musculoskeletal exam was mostly normal, except for mild diffuse discomfort with thoracolumbar range of motion.  Neurologically, no sensory or motor defects were noted, although supine straight leg test was positive on the left at 50° and at 40° on the right secondary to increased back pain and seated straight leg lift was negative on the right and positive at 90° on the left; and Romberg's test was positive. Mr. Robinson's

gait was mildly antalgic but he walked without assistance.  He was alert and oriented times three and his affect, mood and intellectual functioning appeared normal.

### Dr. Honickman, May 30, 2006 (R. 229-30)

Mr. Robinson alleged depression, possible prostate cancer, back pain from three herniated discs and two hernias which have not been repaired.   Mr. Robinson was oriented in all spheres; mood and affect were appropriate; hallucinations were denied; he could recall five digits forward and backwards; he said the alphabet in five seconds with no errors; he counted backwards from 20 in seven seconds with no errors; performed serial threes from 1-50 in 17 seconds with no error; his thought processes were organized and content was situationally appropriate; and his insight and judgment were good.  Dr. Honickman concluded that he "appears to suffer from no mental disorder."

After considering the record evidence, the ALJ determined that Plaintiff suffers from degenerative disc disease of the lumbar spine; an abdominal hernia; and left eye blindness. (R. 14-15.)  The ALJ determined that, while these impairments were severe, Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (R. 15.)

The ALJ then determined that Plaintiff retained the physical RFC to perform medium work. He must avoid the use of ropes and scaffolds, and of ladders exceeding six feet and he must avoid exposure to unprotected heights. For sedentary occupations only, the Plaintiff must be afforded a sit/stand/walk option, permitting no more than five steps from the work station, a stretching maneuver, returning to the work station within

10

one minute, and performed not more than five times each hour. (R. 15-19.)  Relying

upon the testimony of a VE, the ALJ concluded that Plaintiff was not disabled because

he could perform his past relevant work as a handyman, as it was actually performed,

but not as it is generally performed in the national economy. (R. 19.)  While stating that

it was unnecessary to move on to Step 5 of the sequential analysis, the ALJ noted that

the VE "identified 21,660 jobs in three other occupations in the medium and light

exertional levels existent in the local and national economies which a person with

claimant's vocational profile could perform notwithstanding the impairments found

above in this Decision." (R. 19.)

## IV.  DISCUSSION

### A.    *Remand is not required for incomplete record or post-hearing evidence*

Plaintiff first argues that the case should be remanded because the record

before the Court is incomplete and that some of the evidence relied upon by the ALJ

was not proffered to Plaintiff's counsel.  The Court finds that neither of these issues

requires remand.

As of April 25, 2009, when the administrative file was at the hearing office, the

"F"portion of the file, which contains all of the medical evidence, only had one exhibit.

(R. 62.)  As a result, the ALJ sought the assistance of Plaintiff's counsel with

reconstructing the record. (R. 63-67, 262-63.)  While some of the missing evidence was

obtained after the hearing, it is undisputed that some of the medical evidence relied

upon by the Commissioner in denying the claim at the initial levels of review was never

added to the record.

Specifically, a June 12, 2006 SSI Notice of Disapproved Claim, advised Mr. Robinson that his SSI claim was denied and listed the medical evidence that was "used in evaluating [Mr. Robinson's] claim":

> NEAL LUMAPAS, M.D., report received 11/18/2005
> SHANDS HOSPITAL GAINESVILLE, report received 8/16/2005
> Medero Medical report received 05/04/2006
> Gary Honickman, Ph.D., report received 05/31/2006

(R. 258)(capitalization in original.)

In addition, the record includes a Disability Determination and Transmittal form signed on June 8, 2006 by Nicholas Bancks, M.D. which references a "RFC dated 06/08/2006." (R. 259.)   Two of these referenced reports subsequently were added to the record – i.e., Medero Medical Center report dated May 11, 2005[24] and Dr. Honickman's report dated May 31, 2006.  (R. 229-30, 248-51.)   However, none of the other referenced reports and progress notes were added to the record.  In addition, the file documents evidencing that Plaintiff underwent a consultative examination by Dr. Fields on February 26, 2007 was never added to the record. (R. 63-64, 262.)

Plaintiff argues that the Commissioner failed to file a complete record "including the evidence upon which the findings and decision complained of are based"[25] and that this matter should be remanded with instructions for the ALJ to reconstruct the record by obtaining all of the missing evidence.   While the Commissioner relied upon evidence at the initial and reconsideration levels that was not included in the record,

---

[24] The facsimile from Medero Medical is missing the last page of the report, which appears to be the signature page.

[25] 42 U.S.C. §405(g).

there is no suggestion that the ALJ considered any of that missing evidence in making his final determination in this case.  The ALJ's decision does not discuss or evaluate the reports from Dr. Lumapas, Shands Hospital or Dr. Fields. While this may be true, only the final decision of the Commissioner is subject to judicial review – not the initial and reconsideration decisions.

At the hearing on May 6, 2008, there was a discussion about how the record was incomplete because there were "no consultative examination reports in the examination file." (R. 262-63.)   The ALJ stated that "we don't have them in our files" and promised to "track that down with our folks" to find out "what the story is." (R. 263.)  After the hearing, the ALJ sought to obtain the missing reports (R. 55) and two of the consultative examination reports subsequently were added to the record – i.e., Dr. Raju, M.D. in June 2003 and Dr. Medero in May 2005.[26]  Plaintiff argues that the ALJ committed reversible error in failing to tender this post-hearing evidence to Mr. Robinson.

Due to Mr. Robinson's death, his application for SSI benefits is no longer viable, and thus, the only remaining issue is whether Mr. Robinson was disabled during a three month closed period from October 1, 1998 through December 31, 1998.  Because the reports from Dr. Raju and Dr. Medero significantly post-date Plaintiff's date last insured and the reports do not relate to Plaintiff's condition prior to his date last insured, Plaintiff

---

[26]  Plaintiff also underwent a consultative examination performed by Dr. Fields on February 26, 2007, which was never added to the record. (R. 63-64, 262.)  Apparently, the examination report was destroyed by Dr. Fields. (R. 65, 67.)

13

has failed to show that Mr. Robinson was prejudiced.  Accordingly, a remand is not

warranted.[27]

**B.      The RFC finding is supported by substantial evidence**

The ALJ concluded that Plaintiff could perform medium work but must avoid the

use of ropes and scaffolds, and of ladders exceeding six feet; must avoid exposure to

unprotected heights; for sedentary occupations only, the claimant must be afforded a

sit/stand/walk option, permitting no more than five steps from the work station, a

stretching maneuver, returning to the work station within one minute, performed not

more than five times each hour. (R. 15-19.)

Plaintiff contends that the ALJ erred in his RFC assessment because none of Mr.

Robinson's treating or examining sources provided an express statement of his

functional limitations.  However, there is no express requirement in the regulations that

the ALJ have such a functional report before determining a claimant's RFC.  While an

ALJ should review all of the medical evidence, and may consider opinions from

acceptable medical sources when determining the RFC, the final responsibility for

deciding those issues is reserved for the Commissioner. [28]

Plaintiff further argues that the findings of the consultative examiners do not

support the ALJ's finding that Mr. Robinson can stand and walk for six hours out of an

8-hour workday, which is required for the performance of medium work.  While no

treating or examining source made this specific finding, the ALJ's conclusion,

---

[27] Smith v. Schweiker, 677 F.2d 826, 830 (11th Cir. 1982.)

[28] 20 C.F.R. §404.1527(e)(2)

nevertheless, is supported by the minimal findings made by Dr. Raju, Medero Medical and Dr. Demmi. Indeed, Dr. Raju, whose examination was performed closest in time to Mr. Robinson's date last insured[29] noted that Mr. Robinson was able to walk unassisted, without limping and with no difficulty getting on and off the examination table.  His hand grip was normal.  Dr. Raju noted stiffness and tenderness with muscle spasm in the lumbar and cervical spine.

Likewise, the examination of Mr. Robinson by Medero Medical almost two years later on May 11, 2005, revealed limited findings – i.e., pain on the range of thoracolumbar motion but no scoliosis; normal motor and grip strength; lower back pain on full range of hip motion; antalgic gait with a limp to the left leg but Mr. Robinson walked without assistance; and neurologically, while he had positive straight leg tests, no sensory or motor defects were noted and his Romberg was normal.   Dr. Demmi also made minimal findings on examination in April  2006.  He found that the musculoskeletal exam was mostly normal, except for mild diffuse discomfort with thoracolumbar range of motion.  Neurologically, no sensory or motor defects were noted, although supine straight leg test was positive on the left at 50° and at 40° on the right secondary to increased back pain and seated straight leg lift was negative on the right and positive at 90° on the left; and Romberg's test was positive. Mr. Robinson's gait was mildly antalgic but he walked without assistance.

---

[29] Dr. Raju examined Plaintiff on June 6, 2003, almost five years after December 31, 1998, Mr. Robinson's date last insured.

Accordingly, the minimal findings made by the consultative examiners, as well as Plaintiff's absence of treatment for his back, other than chiropractic care in 1997, supports the ALJ's conclusion that Mr. Robinson could perform medium work.

### C.    The ALJ's credibility finding is based on substantial evidence

Next, Plaintiff argues that the ALJ's credibility finding is not supported by substantial evidence.  When a claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms, he must show evidence of an underlying medical condition and must demonstrate either that objective medical evidence confirms the severity of the alleged symptom arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptoms.[30] If the ALJ determines the claimant has such a condition, the ALJ must evaluate the intensity and persistence of the alleged symptoms and determine how they limit the claimant's capacity for work.[31] During this evaluation, the ALJ must consider the claimant's testimony regarding his symptoms, including any inconsistencies between the testimony and the other evidence.[32]

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the

---

[30] Foote, 67 F.3d at 1560.

[31] 20 C.F.R. §416.929(c).

[32] Id.

record must be obvious as to the credibility finding.[33]  While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[34]

Here, in applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing underlying medical conditions that could be expected to give rise to symptoms. Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's subjective complaints were not fully credible considering the objective medical evidence, lack of treatment, and activities of daily living.

With respect to Mr. Robinson's testimony of lower back pain due to 3 ruptured discs, the ALJ correctly noted that Plaintiff testified that he has received no other treatment for his back since chiropractic care in 1997.   Moreover, the ALJ noted that his complaints were not consistent with the limited findings by Dr. Raju, Medero Medical and Dr. Demmi.  The lack of objective evidence, together with the lack of treatment, support the ALJ's credibility finding.

Nor is there any objective evidence suggesting that Mr. Robinson's bilateral abdominal hernias caused functional limitations that would prevent him from performing medium work.  Plaintiff testified that his abdominal hernia had been surgically repaired twice, once in 1990 and again in 1991.  While Mr. Robinson reported to Medero Medical in May 2005 that his stitches are "pulling out" which causes him pain whenever

---

[33] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[34] Foote at 1562-1563.

he lifts or bends, he has had no follow-up or further treatment.  In June 2003, Dr. Raju found that the hernias protruded only on stress and coughing and in April 2006, Dr. Demmi noted on examination that the hernia on the right side was moderate in size and on the left, small and nontender.

Plaintiff testified that he was impaired by left eye blindness, with a prosthetic eye since he was eleven years old, which would sometimes result in bleeding.  However, Plaintiff was able to work for more than thirty years, despite his left eye blindness and prosthesis.  Moreover, in April 2006, Dr. Demmi found Plaintiff with 20/20 corrected visual acuity of his right eye and 20/20 bilaterally. (R. 220.)   As for Plaintiff's prostate condition, the record shows that the first time it was at issue was in March 2004 – more than five years after Plaintiff's date last insured.  Indeed, in June 2003, Plaintiff denied all prostate/urinary symptoms to Dr. Raju. (R. 246.)

Finally, Plaintiff testified that he was prescribed medication, including Trazadone, for depression.  However, Plaintiff also testified that although he was told he had depression he did not think he was depressed.  (R. 283-84.)   Moreover, consultative examiners in May 2005 and April 2006 found that Mr. Robinson was alert and oriented times three, affect and mood tone normal, and normal intellectual functioning. Notably, Dr. Honickman confirmed that Mr. Robinson never had mental health treatment and after completing the consultative examination concluded that Plaintiff did not have any mental disorder.

In addition to the lack of objective medical evidence, the ALJ correctly noted that Plaintiff's daily activities were not consistent with his alleged disabling conditions. It is well-settled that the ALJ may consider household and social activities in evaluating

18

claims of disabling pain.[35]  Here, Plaintiff testified that he is able to bathe and dress

himself; prepare a microwave dinner or sandwich; drive fifty miles per week; dust; mop

and sweep the floor with pain; vacuum; wash dishes; do laundry; take out small trash

bags; and grocery shop. (R. 285-88.)  Mr. Robinson testified that he would need to rest

for 20 minutes after sweeping, mopping or vacuuming for 5 minutes.  Mr. Robinson

watches television, reads the newspaper and does crossword puzzles. (R. 288, 290-

92.)  Plaintiff reported that he was able to lift a gallon of milk, walk two blocks before his

back gives out, and sit for 20 to 30 minutes. (R. 296-97.) )

 Accordingly, the ALJ properly evaluated Plaintiff's subjective complaints.

###    D. The ALJ's finding that Mr. Robinson could perform his past relevant work or other work is supported by substantial evidence

 Plaintiff contends that the ALJ's finding that Mr. Robinson retains the RFC to

perform his past relevant work as a handyman or to perform other work that exists in

the national economy is not based on substantial evidence.

 Plaintiff argues that the ALJ failed to consider properly the mental and physical

demands of Mr. Robinson's past relevant work as a handyman.   Plaintiff provided a

detailed description of his past relevant work in his Work History Report (R. 95-102) and

Disability Report (R. 105-06) in which he stated his basic duties, the amount of time

required to sit, stand or walk, and the weight he was required to lift.   According to 20

C.F.R. §404.1565, this is the precise information needed by the Commissioner when

considering past relevant work as a vocational factor.  At the hearing, the ALJ asked the

---

[35] See Dyer v. Barnhart, 395 F.3d 1206, 1209-12 (11th Cir. 2005); Macia v. Bowen, 829 F.2d 1009,
1012 (11th Cir. 1987); 20 C.F.R. §404.1529(c)(3)(i); 20 C.F.R. §416.929(c)(3)(i).

VE to classify Mr. Robinson's past relevant work as a handy man based on his description and the vocational exhibits in the record.  The VE was able to do so, and stated he did not need any clarification of Plaintiff's description. (R. 301-03.)  He concluded that based upon Mr. Robinson's description his past relevant work would be a building maintenance repairer (DOT number 889.381-010), which is a medium and skilled job but light and semi-skilled as actually performed.  (R. 302.)   Plaintiff has failed to identify what, if any, physical or mental demands were not accounted for in the record.

Plaintiff contends that the ALJ's finding that Mr. Robinson should avoid ladders exceeding six feet and avoid exposure to unprotected heights, would not allow for him to perform his work as a handyman because his duties included changing light bulbs and windows.  However, there is nothing in the record suggesting that Mr. Robinson was required to climb ladders exceeding six feet in order to perform his handy man work.

Even if the ALJ erred in finding that plaintiff could return to his past relevant work, the VE provided additional testimony for an alternative step five determination. Plaintiff contends that the hypothetical to the VE did not include all of his functional limitations.  While the hypothetical question must include all of the claimant's limitations,[36] an ALJ is not required to include findings in the hypothetical that he

---

[36] Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002.)

properly finds are unsupported.[37]  Nor is an ALJ required to include in the hypothetical each and every symptom of the claimant.[38]

Here, the ALJ's hypothetical question to the VE included all of the restrictions accepted as credible by the ALJ and included in the RFC. As discussed above, the RFC was supported by substantial evidence.  (R. 303-05.)  The ALJ was not required to include Mr. Robinson's subjective complaints which the ALJ properly discredited. Plaintiff argues that the ALJ failed to include documented manipulative limitations – i.e., Mr. Robinson's testimony that his left hand is "always tingling" and "[e]very once in a while I'm carrying something and it will just drop." (R. 297.)  However, even if the ALJ erred in failing to include this manipulative limitation, it is harmless error because Plaintiff first reported these symptoms to Dr. Demmi in April 2006 and Dr. Demmi noted, "[h]e has had symptoms of carpal tunnel syndrome for the past year which has been a gradual onset." (R. 219.)   Thus, according to Mr. Robinson this did not become a problem until six or seven years after his date last insured.

The VE testified that Mr. Robinson could engage in work as a fish cleaner (DOT number 525.684-030; 2,370 jobs in Florida; 68,399 jobs nationally; medium and unskilled); bank teller (DOT number 211.362-018; 13,971 jobs in Florida; 70,095 jobs nationally; light and low skilled); and ticket seller (DOT number 211.467-030; 5,319 jobs in Florida; 96,714 jobs nationally; light and unskilled.) (R. 305-06.)  Plaintiff argues that Mr. Robinson cannot perform the bank teller position because it is a skilled job and there is no evidence that he can do such work.  Even so, it would make no difference

---

[37] Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004.)

[38] Ingram v. Commissioner of Social Security, 496 F.3d 1253, 1270 (11th Cir. 2007.)

21

because Plaintiff could still perform the other two jobs, each of which represents a significant number of jobs in the local and national economies.[39]

### E. The ALJ was not required to call a medical expert to provide testimony regarding the onset of Mr. Robinson's condition

Lastly, Plaintiff argues that the record was "inadequate" to make a proper decision regarding Mr. Robinson's ability to work prior to December 31, 1998, and thus, the ALJ was required to obtain medical expert testimony to establish the date of onset. The need to determine an onset date, however, does not arise unless and until the Plaintiff has proven he has a disabling impairment.[40]  Because Plaintiff was unable to meet his burden of proving disability, onset was not an issue before the ALJ and medical expert testimony was not needed.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).  The Clerk is directed to enter final judgment consistent with this Order and to close the file

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 29, 2010.

GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel

---

[39] *See* <u>Allen v. Bowen</u>, 816 F.2d 600, 602 (11th Cir. 1987)(174 jobs locally, 1,600 jobs in Georgia, and 80,000 jobs nationally.)

[40] *See* SSR 83-20 ("How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred."